IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INE NWEKE, Individually and on Behalf of All Other Similarly Situated<br><br>Plaintiff.<br><br>v.<br><br>ASTER HEALTH GROUP, INC., and KELLY GILBERT<br><br>Defendants. | Case No. 1:22-cv-2410<br><br>Judge John F. Kness |

**JOINT STIPULATION TO CERTIFICATION, MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND NOTICE TO THE SETTLEMENT CLASS**

Plaintiff Ine Nweke, individually and on behalf of all others similarly situated, and Defendants Aster Health Group, Inc., ("AHG") and Kelly Gilbert (collectively, "Defendant" or "Defendants"), jointly submit this Joint Motion for Preliminary Approval of Class and Collective Action Settlement and Notice to the Settlement Class.

**I.      INTRODUCTION**

Plaintiff has reached an agreement to settle this class and collective action with Defendants regarding Defendants' alleged violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq*. ("IWPCA"). Defendants dispute all claims made by Plaintiff and the putative class but agrees that resolution of all claims is best for all parties. The terms of the agreement are contained in the Joint

Stipulation of Settlement and Release ("Agreement") attached as Exhibit 1. Plaintiff and Defendants now seek entry of an order:

- Certifying a collective action under the FLSA and a class action under Fed. R. Civ. P. 23 for purposes of settlement including appointment of Sanford Law Firm, PLLC, as Class Counsel;

- Granting preliminary approval of the Agreement;

- Approving the parties' proposed forms and methods of giving Potential Settlement Members notice of the proposed Agreement;

- Directing that notice be given to Potential Settlement Members in the proposed forms and manner; and

- Setting a fairness hearing after preliminary approval on whether the Court should grant final approval of the Agreement, enter judgment, award attorneys' fees and costs to Plaintiff and Class Counsel, and approve a service award to Named Plaintiff Ine Nweke.

The Agreement provides substantial benefits via the Settlement Fund established for the benefit of the Potential Settlement Members. Class Counsel will administer the settlement claims process and Defendants will issue all required checks and tax forms at the end of the tax year. Defendants will pay attorneys' fees and expenses and Plaintiff's service award if approved by the Court.

The proposed Agreement addresses Plaintiff's litigation objectives and falls within the range of possible final approval. The Agreement was negotiated at arm's length by lawyers experienced in complex litigation. For these reasons, the Agreement enjoys a presumption of fairness and should be submitted to Putative Settlement Members for their reaction.

I. **SUMMARY OF THE LITIGATION AND SETTLEMENT**

A. **The Litigation**

This lawsuit was filed on May 6, 2022, in the Northern District of Illinois. Plaintiff asserted claims against AHG and Kelly Gilbert under the FLSA, IMWL, and IWPCA in which she alleged that Defendants failed to sufficiently compensate their live-in Caregivers by paying them a set daily amount regardless of the hours worked, which at times caused their constructive hourly rate to fall below the statutory minimum, and, at times, failing to pay them the 1.5x their regular rate for hours worked over 40 in a week as required by law.

B. **Settlement Discussions**

Plaintiff's counsel and counsel for Defendants have engaged in extensive negotiations concerning the possible resolution of the claims in this lawsuit. These discussions took place in earnest following informal discovery, including the provision of time records and payroll data for the proposed class. The parties' settlement discussions ultimately resulted in an agreement, the terms of which have been memorialized in the Class and Collective Action Settlement Agreement attached hereto as Exhibit 1.

The Parties believe they were fully and adequately informed of all facts necessary to evaluate the case for settlement and reached a settlement through voluntary and full production of relevant time and payroll records, exchange of mathematical calculations on possible underpayments at certain times and in either the minimum or overtime wages. They further believe the settlement terms are fair, reasonable and just. The material terms of the settlement are set forth in this document and its attachments:

C. **The Terms of the Proposed Settlement**

1. **Relief Available to Potential Settlement Members**

Under the terms of the proposed Agreement, Defendants will provide significant benefits to the certified FLSA collective- and IMWL, and IWPCA class. The Settlement Class is comprised of all current or former live-in Caregivers of Defendants who were employed anytime between May 6, 2019 and September 30, 2022 ("Putative Settlement Members"). Including Plaintiff, there are 27 such individuals. The gross amount of the agreed-upon settlement for all claims is $85,000.00. From this, Defendants will create a net settlement fund of $49,452.20 to cover all payment obligations to class/collective members under the Agreement other than the service award to Plaintiff and attorneys' fees and costs. Defendants will pay each Putative Settlement Member who submits a timely claim using the agreed Claim Form and fulfills the conditions of the claim procedure specified in the Agreement ("Settlement Collective Members"), the amounts contained within Exhibit E to the Agreement.

Each Potential Settlement Member has been allocated a share of the fund corresponding to the amount of maximum alleged damages available to them as calculated by counsel for the parties. These calculations take into account the day rate received by each Potential Settlement Member, the amount of hours each one was recorded to have worked biweekly during the relevant time period, and the Cook County minimum wage applicable to each pay period worked. Counsel for both parties arrived similar amounts of total wages allegedly due to the class (though they differ in the amount of minimum wages verses overtime wages). While counsel for the parties compiled different damages models, each individual's allocated settlement share represents a compromise between the two models. Under the model proposed by Plaintiff's counsel, the net settlement fund is equal to approximately 70% of the collective's total alleged lost wages, while under Defendant's model, the fund is equal to approximately 88% of the calculated lost wages. Each Potential Settlement Member whose calculated share was less than $100.00 was assigned a minimum

amount of $100.00. Of the amount paid to each Potential Settlement Member, 100% will be deemed wages and subject to normal payroll tax withholding and W-2 reporting. The parties further believe their mutual methods take into account that during the relevant three-year class period and fact that the Defendant's payroll system changed from a flat fee to an hourly rate of pay on July 5, 2020, that resolved issues surrounding use of a day rate.

This amount is fair and reasonable in this case because, throughout the relevant time period, Defendant's position is that all employees were properly compensated for minimum and overtime pay. The settlement amount was determined from the exchange of calculations and an agreed-upon gross amount that fully compensates each class member for alleged wages due. (It is from that amount that fees, costs and a small premium payment is made). The amount further takes into account that some class members' claims are less than $100.00, yet they will receive that amount, if not more, depending on whether they opt in/opt out. The Agreement amounts also account for the possibility that this Court could deny a Motion for Conditional Certification of the FLSA collective action or a Motion for Rule 23 Certification of the IMWA and IWPCA class thereby requiring individual claims to be pursued or even abandoned.

    **2.**  **Class Notice and Settlement Administration**

If approved by the Court, Plaintiff's counsel will send a Notice packet containing Exhibits A, B, and D to the attached Agreement to the Putative Settlement Members by first-class mail and email following the Court's preliminary approval. Putative Settlement Members will have forty-five (45) days after the Notice is mailed to submit their Claim Form or Opt-Out Form. Prior to the final fairness hearing, Plaintiff's counsel will file all Claim Forms and Opt-Out Forms submitted to the Court.

### 3. Opt-Out, Objection, Opt-In and Release Provisions

A Potential Settlement Member may object to the Settlement by serving on counsel for the parties a written objection no later than forty-five (45) days after the Notice is mailed. Any Potential Settlement Member who does not properly submit an objection will be deemed to have waived any right to object and any objection to the Settlement. Any Potential Settlement Member may opt-out of the settlement, provided that they submit the Opt-Out Form no later than forty-five (45) days after the Notice is mailed. Potential settlement members will also be notified of the fair hearing date.

Each individual who returns a Claim Form will be deemed to have fulfilled the requirements of Section 216(b) of the FLSA and their submittal of an executed claim form represents their affirmative decision to opt into this case and be bound by the terms of the settlement, if approved. They will release any and all claims they may have against Defendants for unpaid wages between May 6, 2019, and September 30, 2022 that specifically includes all claims under the FLSA and state wage/hour laws. Any claims that Potential Settlement Members may have against Defendants that are unrelated to wages, hours worked, or employment expenses will be unaffected.

All Potential Settlement Members who do not exclude themselves from the Settlement will be bound by a release of wage-and-hour claims only, specifically excepting any claims under the FLSA that are covered in the paragraph above. The Settlement contemplates a Final Approval Hearing after the close of the claim period so the Court can hear any timely objections and evaluate the fairness of the Settlement. Unless they have timely asserted an objection to the Settlement, all Potential Settlement Members are deemed to have waived all objections and opposition to its fairness, reasonableness and adequacy.

1. **Service Award**

The Parties request that a service payment be awarded to Named Plaintiff Ine Nweke in the amount of $1,000.00 in recognition of her role in this litigation as the lead plaintiff, bearing risks on behalf of the class. This payment is also in return for a general release of claims. As discussed in Section III.C below, service payments are standard in class actions.

II. **PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE**

A. **The Settlement of a Class Action Is Favored and Should Be Preliminarily Approved If It Falls Within the Range of Reasonableness.**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal Courts naturally favor the settlement of class action litigation"); *see also Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."); *Newberg on Class Actions* § 11.41 (Fourth) (2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "This policy is particularly appropriate in class actions: In the class action context in particular, 'there is an overriding public interest in favor of settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.'" *Id.* (citing *Armstrong*, 616 F.2d at 313).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). The typical process

for approval of class action settlements is described in the *Manual for Complex Litigation (Second)*, §§ 21.632-.634 (1985). The steps are:

1. Preliminary approval of the proposed settlement at an informal hearing;
2. Dissemination of mailed and/or published notice of the settlement and fairness hearing to all affected Potential Settlement Members; and
3. A "formal fairness hearing," or final approval hearing, at which Potential Settlement Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

This procedure, commonly employed by federal courts, serves the dual function of safeguarding Potential Settlement Members' procedural due process rights and enabling the Court to fulfill its role as the guardian of the Potential Settlement Members' interests. *See Newberg*, § 11.25 (quoting *Manual for Complex Litigation* (Second) (1985)). A Court may approve a Settlement Agreement upon a "finding that it is fair, reasonable and adequate." (Fed. R. Civ. P. 23(e)(2)). This determination is entrusted to the discretion of the district court. *Leung*, 326 F.R.D. at 199. When making this determination, "the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public." *Alliance To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982). "By definition, a fair settlement need not satisfy every concern of the plaintiff Class, but may fall anywhere within a broad range of upper and lower limits. 'The essence of settlement is compromise . . . a solution somewhere between the two extremes.'" *Id.* (quoting *Armstrong*, 616 F.2d at 315); *See also, Staton v. Boeing Co., Inc.*, 327 F.3d 938 (9th Cir. 2003) *(If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing be given to the Class Members, where evidence and argument may be presented for and against the proposed

...

settlement).

The parties request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement.

### B. Certification of a Class is Appropriate.

A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In evaluating the fairness, reasonableness, and adequacy of the settlement, the Court should view the facts in a light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court should not substitute its own judgment as to the best outcomes for litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980). The Court's role is to determine whether Plaintiffs are asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. See H. Newberg on Class Actions, §24.13 at 60 (3d ed. 1992)(hereafter "Newberg"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974).

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. A plaintiff must satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)(citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). First, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id*.

Next, the action must satisfy one of the conditions of Rule 23(b). *Id*. Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty Class Members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect

to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

Plaintiffs assert that their wage/hour claims brought under state law meet the requirements for class treatment of this Lawsuit.

### C. The Proposed Settlement Negotiated by The Parties Enjoys A Presumption of Fairness.

"A strong presumption of fairness attaches to a [class] settlement" reached in arm's-length negotiations between experienced, capable counsel. *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 210368, *14 (S.D. Ill. Dec. 13, 2018); see also 4 *Newberg* § 11.41 (noting that where the settlement is the product of arm's-length negotiations between capable counsel experienced in complex class action litigation, the court should begin its analysis with a presumption that the settlement is fair and should be approved).

Here, the Settlement is presumed fair and falls within the range of possible recovery. The Agreement was reached at arm's length by counsel for the parties bargaining over a period of months, through numerous written exchanges and telephone conferences. The parties extensively discussed the merits of the claims and defenses and the relief available to Potential Settlement Members. After reaching a complete settlement agreement in principle, the parties turned their attention to documenting the settlement and exchanged draft settlement agreements, forms of notice, and claim forms.

In negotiating the terms of the Agreement, Plaintiff had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. In Plaintiff's counsel's view, the Settlement provides substantial benefits to the Potential Settlement Members, especially when considering, among other things, the attendant expense,

risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. On preliminary evaluation, the Agreement here is presumptively fair and worthy of preliminary approval.

        **D.**      **The Settlement Benefits Fall Within the Range of Possible Recovery.**

"A district court should approve an FLSA collective action settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between parties." *Bainter v. Akram Invs., LLC*, 2018 U.S. Dist. LEXIS 177445, *2 (N.D. Ill. Oct. 9, 2018). The factors the courts are to consider are the following:

> (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed that placed the ultimate outcome of the litigation in doubt; (3) whether the value of immediate settlement outweigh the mere possibility of future relief after protracted litigation; and (4) whether the settlement is deemed fair and reasonable by the Parties.

*Id.* at *2-3. If If the Court finds the settlement "within the range of possible approval," it should then order that the Potential Settlement Members be notified of the settlement and of a formal fairness hearing to be held on the question of settlement approval. *See Manual.* at § 40.42 (model preliminary approval order).

Here, the Agreement provides Potential Settlement Members with substantial relief, without the delay and expense of trial and post-trial proceedings. The parties adopted the full three-year period for purposes of auditing the time and payroll records and using that time period in reaching this settlement.

If the parties did not agree to settle the case, discovery, motions practice and a trial would be lengthy and expensive. The Potential Settlement Members would face the risk of argument by Defendants that they were paid properly. Even if the Potential Settlement Members obtained a judgment in their favor, there could be an appeal. In light of those risks, the proposed Agreement

is a fair, reasonable and adequate compromise of the issues in dispute that provide meaningful relief to Potential Settlement Members.

In addition, the service award to the Named Plaintiff is routine, appropriate and serves public policy by encouraging individuals to come forward to protect the rights of others, while at the same time compensating them for the time, effort, and inconvenience to represent the interests of absent Potential Settlement Members. *See Briggs v. PNC Fin. Servs. Group*, 2016 U.S. LEXIS 165560, *6 (N.D. Ill. Nov. 29, 2016). More importantly, because the Named Plaintiff conferred a $49,452.20 benefit upon the absent Potential Settlement Members, equity dictates that she receives a service award for the benefit she has conferred.

### III. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

#### A. Notice by First Class Mail and E-Mail is Sufficient.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all Potential Settlement Members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual for Complex Litigation* at §§ 21.632, 21.633. In order to protect the rights of absent Potential Settlement Members, the Court must provide the best notice practicable to Potential Settlement Members. *See Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985).

Notice by first class mail is practical when the names and last known addresses of most of the Class Members are known. *See Manual for Complex Litigation* at § 30.211. Neither Rule 23 nor due process require receipt of actual notice by all Potential Settlement Members, rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. *Newberg*, § 8.04 (citing *Manual for Complex Litigation* at § 30.211). If notices are returned as undeliverable, the Class Counsel will perform a standard skip trace to find a better

address for subsequent mailing.

Because the identities of the individual Potential Settlement Members are known by AHG, the parties propose sending the Notice through first class mail. The proposed Notice, Claim Form, and Opt-Out Form are included as Exhibits A, B and D to the Settlement. Potential Settlement Members will receive pre-paid envelopes by which to return their Claim Form or Opt-Out Form, as well as an email address for Plaintiff's counsel for purposes of returning the form. Under the circumstances of the present case, this Notice is consistent with applicable law and avoids unnecessary expense that would otherwise diminish the amount of the money available to Potential Settlement Members. The Court should find that sending the proposed Notice by mail complies with the notice requirements imposed by Rule 23.

    **B.**     **The Proposed Form of Notice Adequately Informs Potential Settlement Members of Their Rights in This Litigation.**

The notice must inform each Potential Settlement Member that "the court will exclude anyone from the class if he so requests [by a specified date]; the judgment will include all members who do not request exclusion and any member not requesting exclusion may, if he desires, enter an appearance through counsel." Fed. R. Civ. P. 23(c)(2).

Here, the proposed Notice clearly and accurately discloses the information material to a Potential Settlement Member's decision whether to accept, object to, or opt out of the Settlement. The proposed Notice provides information on the proposed Settlement Class; the terms and provisions of the Settlement; the relief the Settlement will provide; the date, time and place of the final approval hearing; and the procedures and deadlines for joining (or opting into) the Settlement, opting out of the Settlement, and submitting objections. The Notice advises Potential Settlement Members that the Parties have agreed to a service award for the Named Plaintiff and an award of attorney's fees and costs.

The Notice is accurate and informs Potential Settlement Members of the material terms of the Settlement and their rights pertaining to it. The Court should approve the proposed form of Notice and direct that notice be given to the class as proposed by the parties.

## IV. THE AGREED ATTORNEYS' FEES AND COSTS ARE REASONABLE

Under the FLSA, an award of reasonable attorneys' fees and costs to prevailing plaintiffs is mandatory. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *LeTourneau v. Pan Am. Fin. Servs.*, 1998 U.S. App. LEXIS 20885 (7th Cir. Aug. 21, 1998) ("The FLSA mandates that courts award a 'reasonable attorney's fee" to prevailing plaintiffs."). A stipulated agreement of attorney fees in private settlement is afforded more deference than in a disputed case. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Nevertheless, a district court "must carefully evaluate any award of attorney's fees in order to prevent unfair self-dealing by class counsel." *Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 199 (N.D. Ill. 2018).

Subject to approval by the Court, Defendants agree to pay Plaintiff's counsel of $34,547.80 in attorneys' fees and costs and expenses in complete satisfaction of all claims by Plaintiff and her counsel for attorneys' fees, costs and expenses of any kind whatsoever. This is consistent with Plaintiff's representation agreement with her counsel of 40% plus costs of the total settlement. Counsel for Plaintiff have billed 71.3 hours to this case thus far, from investigating claims to drafting the complaint, reviewing the data provided by Defendants, calculation of potential damages, settlement negotiations, and preparation and review of settlement documents. Counsel for Plaintiff will continue to incur substantial fees in monitoring the settlement process, speaking to Potential Settlement Members, and the work involved in obtaining final approval. The amount

in settlement of fees and costs is especially reasonable given the substantial benefit secured on behalf of the Putative Settlement Members.

V. **CONCLUSION**

For the foregoing reasons, the Court should grant preliminary approval of the proposed Settlement and enter the accompanying Order of Preliminary Approval included as Exhibit C to the Agreement.

        Respectfully submitted,

        **INE NWEKE, Individually and on Behalf of All Others Similarly Situated, PLAINTIFF**

        SANFORD LAW FIRM
        Kirkpatrick Plaza
        10800 Financial Centre Pkwy, Ste. 510
        Little Rock, Arkansas 72211
        Telephone: (800) 615-4946
        Facsimile: (888) 787-2040

        */s/ Josh Sanford*
        Josh Sanford
        Ark. Bar No. 2001037
        josh@sanfordlawfirm.com

and    **ASTER HEALTH GROUP, INC., and KELLY GILBERT, DEFENDANTS**

        HINSHAW & CULBERTSON LLP
        151 North Franklin St., Ste. 2500
        Chicago, Illinois 60606
        Telephone: (312) 704-3022
        Facsimile: (312) 704-3001

        */s/ Linda K. Horras*
        Linda K. Horras
        Ill. Bar No.6200203
        lhorras@hinshawlaw.com